cc: Fiscal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRITTANY MICHELLE CHAPMAN,<br><br>Plaintiff,<br><br>v.<br><br>FCA US, LLC et al.,<br><br>Defendants. | Case No. 2:25-cv-07336-SB-SK<br><br><br>ORDER IMPOSING SANCTIONS ON PLAINTIFF'S COUNSEL |

Plaintiff Brittany Michelle Chapman retained Strategic Legal Practices APC (the Firm) to represent her in this consumer warranty action. What followed was not merely inadequate representation but an abdication of counsel's core professional responsibility of providing competent, diligent, and accountable representation. The record reveals a volume-driven business approach to litigation—marked by perfunctory line-level attention, lack of meaningful supervision, and execution falling well below professional standards. Most strikingly, counsel approved and filed critical trial documents that effectively doomed their client's case by requiring Plaintiff to prove she purchased a "new" vehicle, despite the undisputed fact that it was preowned. These deficiencies were further compounded by counsel's failure to conduct a reasonable factual and legal investigation, to comply with basic pretrial obligations and court orders, and to provide timely and adequate responses when called to account. Taken together, the record reflects not isolated error, but a systemic breakdown in professional responsibility warranting sanctions.

I.

On March 4, 2026, the Court ordered Plaintiff and her counsel to show cause why sanctions should not issue under the Court's inherent authority, Federal Rule of Civil Procedure 11, and Federal Rule of Civil Procedure 16(f) for counsel's

1

failures to comply with Rule 11 and violations of the Court's orders.  Dkt. No. 49 at 3.

The Court directed Jacob Lister (then-designated lead counsel) and David Lunn (identified as trial counsel) to submit declarations addressing nine subjects: (1) the pre-filing investigation; (2) the Rule 11 basis for alleging that Defendant withheld service literature and parts; (3) the failure to prepare or sign the proposed pretrial order in violation of Local Rule 16-7; (4) counsel's role in negotiating and approving the joint jury instructions and verdict form; (5) counsel's communications with defense counsel in response to the Court's March 2 order; (6) why prior deficiencies had not been corrected or addressed in the March 3 joint status report; (7) counsel's unilateral filing of amended pretrial documents that were both unauthorized and falsely identified as "joint"; (8) whether Plaintiff should be bound by the erroneous jury instructions and verdict form; and (9) counsel's prior history of sanctions or orders to show cause.  *Id*.

Lister and Lunn's initial declarations largely disclaimed knowledge, prompting the Court to require further submissions from attorneys with personal knowledge.  Dkt. No. 53.  Additional declarations were filed by Tionna Carvalho and Larry Chae, along with a second submission from Lunn.  Dkt. Nos. 56, 57, 61. Because Lunn's responses remained deficient—and were not timely supplemented—the Court issued a further order to show cause (OSC) before receiving his eventual response, along with a supplemental declaration from Carvalho.  Dkt. Nos. 63, 71, 73, 74.

The Court held the OSC hearing on March 13 as to Plaintiff and her counsel other than Lunn.  Dkt. No. 64.  At the hearing, counsel confirmed that they had been given a full opportunity to be heard on the OSC.  The Court held the OSC hearing as to Lunn on March 20.  Dkt. No. 79.  After the Court took the OSC under submission, the case settled on the eve of trial.  The Court now rules on the OSC.

## II.

The misconduct in this case has been extensive.  For purposes of this order, the Court focuses only on those violations raised in the OSC for which it imposes sanctions.  Although the Court still has questions about Plaintiff's compliance with Rule 11 in some instances, it finds that sanctions under Rule 16(f) are adequate to address the numerous clear violations of the Court's orders.

Rule 16(f) provides that "[o]n motion or on its own, the court may issue any just orders . . . if a party or its attorney . . . (C) fails to obey a scheduling or other

2

pretrial order." Fed. R. Civ. P. 16(f)(1).  Rule 16 gives the district court discretion to impose a broad range of sanctions, including monetary sanctions, after giving notice of its intent to do so and an opportunity to be heard.  *Ayers v. City of Richmond*, 895 F.2d 1267, 1269–70 (9th Cir. 1990) (affirming award of sanctions to opposing counsel); *see, e.g.*, *Banks v. Whambo! Enters., LLC*, No. 21-56222, 2022 WL 16918023, at *1 (9th Cir. Nov. 14, 2022) (unpublished) (upholding a $500 sanction for attorney's failure to participate in a court-ordered meet-and-confer).  Rule 16(f)(2) provides that "[i]nstead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorneys' fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 16(f)(2).

The Court finds sanctions appropriate as to attorney David Lunn and the Firm and will address each in turn below.  As to Plaintiff (who had no involvement in her counsel's misconduct) and attorneys Tionna Carvalho and Larry Chae, the Court discharges the OSC.  As to attorney Jacob Lister, the Court discharges the OSC with an admonishment:  Even though neither the Firm nor Lister intended for Lister to serve as lead counsel, he was designated as such on the docket, and it was his responsibility either to fulfill the responsibilities of lead counsel or to ensure that someone else at the firm took over in that capacity.  The Court finds that Lister—an associate at the Firm who was tasked only with limited roles—was not primarily responsible for this failure and therefore elects to admonish rather than sanction him.  If this Court ever issues an OSC re sanctions to Lister in any future case, he is ordered to disclose this admonishment.

## III.

In contrast to the other attorneys, David Lunn unambiguously violated numerous Court orders.  The Court first addresses the violations before turning to the appropriate sanctions.

## A.

Although Lunn played no role in the early stages of this case, he was identified as trial counsel in early September 2025.  Dkt. No. 12 at 16 ("Subject to availability, Plaintiff's trial counsel will be David Lunn.").  His first activity in the case was his filing of Plaintiff's memorandum of fact and law on February 20 (Dkt. No. 29), although he did not file a notice of appearance until the next month (Dkt. No. 54), after the Court had issued its OSC.  Lunn also signed other pretrial filings,

including the joint proposed jury instructions and special verdict form filed on February 20.  Dkt. Nos. 38, 40.  Those filings are where the problems at issue in the OSC began.  They stated 12 times—10 times in the proposed jury instructions and twice in the proposed verdict form—that Plaintiff must prove that she bought a new vehicle to prevail on her claims.

The parties' agreement on that requirement was striking for two reasons.  First, it was undisputed that Plaintiff bought a preowned vehicle, so the elements to which she agreed meant that she would necessarily lose at trial.  Second, this was not an obscure issue that was understandably overlooked.  Defendant's motion for judgment on the pleadings was pending when the parties prepared the filings, and the primary issue in that motion—which the parties hotly disputed—was whether the Song–Beverly Act applied to preowned vehicles.  Indeed, the Court issued a tentative order on the motion three days before the proposed jury instructions and special verdict form were filed, and it heard argument and issued a final order adjudicating the motion earlier the same day that Lunn signed the agreed proposed jury instructions and verdict form.  Nor were the 12 references to a new car in the jury instructions and verdict form subtle.  They appeared, for example, in the first element of each of Plaintiff's causes of action, in the title of the restitution instruction (the remedy on which Plaintiff was focused), and in the first question on the special verdict form (and again in the ninth question).  Dkt. No. 38 at 2, 4; Dkt. No. 40 at 34–35, 40.  Under these circumstances, the failure of Plaintiff's counsel—including Lunn—to notice any of the 12 references reflects an unusual degree of carelessness.

As Lunn later explained, the parties "carried over from a prior template" the CACI model instructions for Plaintiff's causes of action and inadvertently failed to change the references to new vehicles.  Dkt. No. 52 ¶ 2(d); Dkt. No. 57 ¶ 2(d).  Despite signing the filings, Lunn "had no direct involvement in the meet-and-confer process," although he was copied on email discussions about them.  Dkt. No. 73 ¶ 11.  At the hearing, he further stated that he had "very limited involvement" in the case and that others had handled pretrial matters even though he filed them.  He then stated, "I don't have any involvement in pretrial issues at all" until a case is ready for trial and that he "hadn't scratched the surface" on this case and did not even know its facts.  Indeed, Lunn said that he probably billed at most one hour in this case—for "making sure that things were done correctly," making sure that others were meeting and conferring, and filing the documents.

Lunn's approach to the pretrial filings is severely deficient.  Rule 11 provides that an attorney who signs a filing "certifies that to the best of the

4

person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b). The Court's Civil Pretrial and Trial Order (PTO) also requires pattern instructions to be "modified and supplemented to fit the circumstances of this case." Dkt. No. 15 at 7. By his own admission, Lunn spent less than an hour on all the pretrial filings collectively—and therefore, necessarily, far less than an hour on the jury instructions and special verdict form. Being unfamiliar with the facts of the case, he could not possibly have ensured that the instructions were modified to fit the circumstances of this case as required by the PTO. That others in his firm took the lead on the instructions' preparation does not excuse Lunn from responsibility for their contents when he signed them. The Court therefore finds that he violated the PTO.[1] That violation led to significant additional work for the Court and the parties.

Lunn's failure to comply with his Rule 11 and PTO obligations in connection with the jury instructions and special verdict form is not his only violation. Given their numerosity, the Court provides only a brief discussion of his other violations:

- Plaintiff failed to prepare or sign the proposed pretrial order, in violation of Local Rule 16-7. Lunn "take[s] full responsibility" for this failure and states that "[t]here is no excuse" for it. Dkt. No. 57 ¶ 2(c).

- In response to the Court's order noting that the instructions and verdict form required Plaintiff to prove she purchased a new car, Lunn filed three amended pretrial filings without seeking leave of court. Dkt. Nos. 45–47. Two of these filings were identified as "joint" even though Defendant had not agreed to them. All three filings violated the PTO and were stricken. Dkt. No. 15 at 4 ("The parties shall *not* file any amended or supplemental PTC Documents or any other trial documents without leave of court."). Lunn describes his filing of the amended pretrial documents as a "mistake" that "should not have happened." Dkt. No. 57 ¶ 2(g).

---

[1] Lunn also clearly failed to comply with his Rule 11 obligations in connection with these filings, and sanctions would also be warranted under Rule 11(c). The Court finds sanctions under Rule 16(f) to be adequate, however.

5

- The Court ordered Lunn to address his unauthorized filing of the "joint" documents. Dkt. No. 49 at 3. He failed to do so, stating instead that "it appears prior failures were addressed in other declarations or are set forth herein." Dkt. No. 52 ¶ 2(g). They were not, and the Court had to issue a second order for him to explain the unauthorized filings before he complied. Dkt. No. 53 at 2–3.

- The Court ordered the parties to meet and confer about the issues with the jury instructions and verdict form. Dkt. No. 43. Their joint response to that order appeared to reflect merely their recitation of their adversarial positions rather than any genuine efforts to meet and confer. Dkt. No. 48. The Court therefore ordered Lunn to "address *in detail*" in his declaration "Plaintiff's discussions with defense counsel in response to the Court's March 2 order, including the length and content of those discussions (excluding the substance of any settlement discussions)." Dkt. No. 49 at 3. Lunn's initial declaration did not address the length and content of the discussions, merely stating that the parties disagreed about the law. Dkt. No. 52 ¶ 2(e). The Court pointed out this deficiency. Dkt. No. 53 at 2. In response, Lunn stated that he "take[s] full responsibility for the March joint report failing to address the Court's concerns" but still did not disclose the length or content of counsel's discussions. Dkt. No. 57 ¶ 2(e)–(f). After the Court pointed out the failure again and ordered a third declaration, Lunn finally acknowledged that "[t]he parties did not hold an in-person or telephonic meet-and-confer session; communications were limited to email exchanges over the course of March 3, 2026." Dkt. No. 73 ¶ 9. Lunn admitted that the parties' joint report (which Lunn signed and filed) "did not substantively address the Court's concerns, did not reflect genuine efforts to resolve or narrow the issues, and did not address the prior failures the Court had identified," for which he apologized. *Id.* ¶ 10.

- The Court also ordered Lunn to "address *in detail*" in his declaration "whether [he] has ever been the subject of an OSC or sanctioned for failing to follow any court rule or order." Dkt. No. 49 at 3. Lunn's initial response was one word: "Yes." Dkt. No. 52 ¶ 2(i). Noting his failure to provide further information, the Court ordered him to file another declaration "identifying each instance in which he was sanctioned or subject to an OSC, along with the outcome." Dkt. No. 53 at 3. Lunn's response identified one federal case in which he was subject to an OSC that was discharged and stated without explanation that he had also been subject to OSCs in state court. Dkt. No. 57 ¶ 2(i). Because Lunn still had not complied, the Court

6

had to order a third response to identify each instance in which he was sanctioned or subject to an OSC, along with the outcome. Dkt. No. 71. In his third declaration, Lunn finally disclosed that he has been sanctioned in four cases (all filed in 2024 and 2025): once for $1,500, twice for $500, and once for $250. Dkt. No. 73 ¶ 12. That Lunn failed to disclose these sanctions (or even that he had been sanctioned, as opposed to merely subject to an OSC that was subsequently discharged) in his first two declarations is concerning apart from the fact that it violated the Court's clear order.

- The Court granted Lunn's request to continue the OSC as to him because of his unavailability on March 13. In that order, the Court noted that Lunn's first two declarations in response to the OSC were "not fully compliant with the Court's orders and continue[d] to raise concerns about Lunn's conduct" and ordered him to file a further declaration by March 16. Dkt. No. 63. Lunn failed to file his declaration by the deadline, prompting the Court to file a further OSC why he should not be sanctioned for the additional violation. Dkt. No. 71. Lunn responded that he read the order and understood that he needed to file a supplemental declaration but failed to note the deadline, which he characterized as "an unacceptable failure" for which he "take[s] full responsibility." Dkt. No. 73 ¶ 2–3.

These clear violations of the Court's orders are the subject of the OSC, and the Court will sanction Lunn for them. The Court also notes three other failures that were not the subject of the OSC, which provide further context, although the Court will not sanction Lunn for them:

- The case management order was issued on September 18, 2025, setting the case for a pretrial conference (PTC) on March 13 and for trial on March 23, 2026. Dkt. No. 13. By that time, Plaintiff had already designated Lunn as trial counsel, so he had six months' advance notice of the PTC and trial dates. Dkt. No. 12 at 16. Lunn confirmed in his first declaration in response to the OSC that "[i]f this case proceeds to trial, I anticipate I will be trial counsel for Plaintiff." Dkt. No. 52 ¶ 1. Yet in that same declaration, Lunn stated that he would be unavailable for the March 13 OSC hearing because he was scheduled to be out of the office for his son's spring break. *Id*. ¶ 4. This declaration—filed less than a week before the PTC—was the first time Lunn indicated his unavailability on that date. He did not mention the March 13 PTC or explain how he expected to serve as trial counsel without having attended the PTC. *See* Dkt. No. 15 at 2 ("Each party must be represented at the PTC by its lead trial counsel."). The Court ordered him to

7

address this inconsistency in his second declaration.  Dkt. No. 55.  He failed to do so, simply repeating that he had a prepaid family vacation and asking for the OSC hearing to be continued or for a remote appearance (without addressing the PTC).  Dkt. No. 57 ¶ 4.  In his third declaration, Lunn finally addressed the issue, stating that he had failed to account for the scheduling conflict and that his earlier statement was based on his understanding of how trial assignments are made at the Firm.  Dkt. No. 73 ¶¶ 14–16.

- The PTO required the parties, if they had any disputes about the admissibility of exhibits, to "meet and confer to determine if each challenged exhibit will be introduced and if the objection can be resolved by discussion of the merits of the objection or a stipulation of fact in lieu of the use of the exhibit," and if they were unable to resolve the objections, to "separately provide 14 days before the PTC a joint document entitled 'Challenged Exhibits Table'" using the form provided and identifying both the objection and the other side's response.  Dkt. No. 15 at 6–7.  The parties did not file a challenged exhibits table, and neither their joint exhibit list nor the original proposed pretrial conference order noted any evidentiary disputes.  On March 17—four days *after* the pretrial conference—the parties for the first time raised a series of evidentiary objections in a new proposed pretrial conference order, which they filed without leave of court in violation of the PTO.  Dkt. No. 15 at 4 (precluding amended or supplemental pretrial documents without leave of court).  The objections merely noted the challenged exhibits and the relevant Rule of Evidence, with no response from the other side.  Although Lunn had been replaced as trial counsel by the time of the improper March 17 filing, the original failure to file a challenged exhibits table with the other pretrial filings appears to be his responsibility.

- At the continued PTC on March 20—the Friday before trial was set to start the next Monday—the parties for the first time made an oral request for Kelly Rentschler to testify remotely at trial.  In the ensuing discussion, Plaintiff's trial counsel acknowledged that Plaintiff had apparently failed to subpoena Rentschler and would be unable to call her to testify.  Rentschler was the only witness identified by name whom Plaintiff intended to call at trial, apart from Plaintiff herself, making this failure even more egregious.  Dkt. No. 32 at 2.  While it is not clear on this record who at the Firm was responsible for this oversight, it appears that Lunn bears at least some responsibility for not having ensured that she had been subpoenaed during the time that he expected to serve as trial counsel and was reviewing the

pretrial filings (including the witness list, which he signed). This oversight did not violate any specific court order, but it reflects a striking degree of carelessness that has permeated the Firm's—and Lunn's—approach to this case.

B.

"An award of sanctions under Fed. R. Civ. P. 16(f) is within the discretion of the district court." *Ayers*, 895 F.2d at 1269. In exercising its discretion, the Court will consider aggravating and mitigating circumstances before deciding the appropriate sanction.

1.

The Court concludes that several factors weigh heavily in favor of imposing significant monetary sanctions on Lunn.

First, the sheer volume of violations is striking. Lunn, who has been licensed to practice law in California for nearly 30 years, did not merely make a careless mistake. His entire performance in this case was riddled with violations of the Court's orders. Even after the Court noted its serious concerns and issued an OSC re sanctions, he repeatedly violated the OSC itself by failing to provide the information ordered by the Court, requiring additional orders to address his noncompliance. It took Lunn three tries to file a substantially compliant response to the OSC—and even that response was untimely.

Second, Lunn's violations have required an extensive expenditure of judicial resources to address, as well as driving up Defendant's expenses. Although the Court declined to hold Plaintiff to her deficient filings (in which she effectively agreed that she could not win her case), requiring the parties to redo them imposed additional costs on Defendant.

Third, although Lunn in his declarations appropriately took responsibility for his failures and repeatedly apologized and acknowledged that he had no excuse for his violations, his conduct at the OSC hearing undercuts his acceptance of responsibility. Lunn began by asserting that it was "unfortunate" that the Court viewed him as personally responsible for the problems in this case because his role was minimal, and it was the Firm's approach to staffing the case that caused the problems. While the Court agrees that the Firm bears an even greater responsibility for the problems in this case, Lunn's argument is concerning. As the Court's recitation of the facts makes clear, Lunn's investment of effort and time in

9

this case may have been minimal, but his role in the violations was not. Lunn's assertion at the hearing that he has billed less than an hour on this case is not a mitigating circumstance, as he appears to have assumed; it is an admission of how far short of his obligations he has fallen.

Fourth, although he did not disclose it as ordered until his third declaration, this is not the first time Lunn has been sanctioned. In fact, he has been monetarily sanctioned four times in the last two years, including once in the reportable amount of $1,500. Those sanctions evidently have been insufficient to convince him of the need to exercise greater care. Moreover, in an additional case in which sanctions ultimately were not imposed, Lunn was subject to an OSC re sanctions for failing to file pretrial documents, and he filed his declaration in response to that OSC on February 12, 2026—less than a month before his deficient filings in this case. *See Horton v. FCA US, LLC*, No. 2:24-CV-08838-JLS, ECF No. 27 at 2 (C.D. Cal. Feb. 12, 2026) (declaration of Lunn in which he "takes full responsibility" for the failure). The recency of that failure apparently did not change his conduct in this case. Lunn's history therefore suggests the need for greater sanctions than have been imposed previously.

2.

On the other hand, there are several circumstances that suggest modest mitigation.

First, the Court accepts Lunn's representation that none of his violations were intentional. Giving him the benefit of the doubt, it does not appear that Lunn knew that he was violating court orders. Instead, he did not take the time even to read and understand the Court's requirements, approaching his filings in this case with extreme carelessness.

Second, Lunn's trial schedule—apparently including 10 back-to-back trials already this year—left him without adequate time to comply with his obligations. As he has acknowledged, this is an "explanation—not . . . a justification." Dkt. No. 73 ¶ 2. An attorney who is too overburdened to fulfill his obligations to his clients and to the court has a duty to refrain from taking on more responsibilities that he will be unable to fulfill. *See, e.g.*, Cal. R. Prof. Conduct 1.1(a) ("A lawyer shall not intentionally, recklessly, with gross negligence, or repeatedly fail to perform legal services with competence."); *id.* at 1.16(a) ("[A] lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if . . . (3) the lawyer's mental or physical condition

10

renders it unreasonably difficult to carry out the representation effectively . . . ."); *Mason v. City of Lake Forest Park*, No. C13-0676, 2014 WL 3881167, at \*4 (W.D. Wash. Aug. 7, 2014) (citing analogous Washington rule and explaining that an "otherwise busy litigation schedule" is not a valid excuse for neglecting counsel's duties to his own clients, the court, or the opposing parties).  Nevertheless, the fact that Lunn's violations were the product of an overcommitted schedule suggests at least the possibility that he can do better if he appropriately restricts his commitments.

Third, Lunn has expressed a commitment to doing better in the future and has taken concrete steps toward that end.  He states that he will not be serving as trial counsel in any federal cases in the near future; that he has enrolled in two remedial courses that he will complete within 30 days; that he is committed to scheduling time each day to review his outstanding obligations to ensure that nothing is overlooked; and that the Firm will assign a more senior attorney to work with him on all cases and assist in the preparation of trial documents.  Dkt. No. 73 ¶¶ 19–22.  Given that Lunn's prior history of sanctions apparently did not prompt such remedial actions (or else they were ineffective), the Court gives less weight to Lunn's stated commitment than it would otherwise, but the fact that he appears to acknowledge the seriousness of his failures and wants to improve is a step in the right direction.

Finally, the Court finds that the Firm bears the greatest responsibility for the failures of representation in this case, including those of Lunn.  As discussed further below, the Firm set Lunn up to fail, assigning him to more trials than he had the capacity to handle effectively and failing to assign a lead counsel to take responsibility for the case.  Lunn is an associate at the Firm, and although he has an independent obligation to satisfy his professional obligations and obey court orders—including by pushing back if the Firm assigns him more than he can handle—the Firm's role provides some mitigation for Lunn's failures.

3.

Weighing the various considerations recounted above, two stand out as requiring a significant monetary sanction:  (1) the number and significance of Lunn's violations in this case, and (2) the failure of prior sanctions (including one in a reportable amount of $1,500) to produce compliance.  Lunn's acceptance of responsibility has been inconsistent, although he has appropriately taken steps to improve his compliance in the future.  Although Lunn's prior $1,500 sanction suggests that a stronger deterrent could be justified, the Court concludes after

11

taking into account the mitigating factors recounted above that a sanction of $1,500 is appropriate.  Accordingly, Plaintiff's counsel David Lunn is sanctioned in the amount of $1,500, to be paid into the Fiscal Section of the Clerk's Office no later than April 17, 2026.  By that same date, Lunn also shall notify the California State Bar of the sanction, attaching a copy of this order, and file proof of payment and notification.

The Court also orders Lunn to file proof of his completion of the two remedial courses for which he has signed up, consistent with his representation in his third declaration.  *See* Dkt. No. 73 ¶ 20 ("I am committed to completing these programs immediately and will file proof of completion with this Court within thirty (30) days of this declaration as a demonstration of my renewed commitment to the standards of the Central District of California.").  Accordingly, Lunn no later than April 17, 2026, shall file proof that he has completed the remedial courses "Federal Rules of Civil Procedure:  Mastering Federal Litigation from Commencing an Action to Strategic Discovery" and "Creating a Trial Notebook: From A–Z (2025 Edition)."

Finally, Defendant is entitled to reimbursement of the additional expenses it incurred as a result of Lunn's violations.  *See* Fed. R. Civ. P. 16(f)(2) ("Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorneys' fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust."); Dkt. No. 49 at 4 ("In the event the Court allows Plaintiff to avoid her agreement [that she must prove she purchased a new vehicle], it expects to order the parties to meet and confer . . . and file a full set of new pretrial filings, with Plaintiff and/or her counsel to pay Defendant's attorney's fees for the additional work required."); Dkt. No. 64 at 2 (ordering Defendant to "track all work completed in connection with the amended filings, as the Court expects to shift the resulting fees to Plaintiff's counsel as part of its sanctions if the Court relieves Plaintiff from her agreement in the original pretrial filings that she must prove that she purchased a new vehicle").  The Court concludes, however, that this sanction should be imposed against the Firm rather than Lunn individually, given its greater responsibility for the circumstances giving rise to the violations.

## IV.

Each of Lunn's violations of the Court's orders is also attributable to the Firm, as Lunn acted only in his capacity as an associate at the Firm.  The Court

12

also has broader concerns about the Firm's approach to this case, raising serious questions about whether it assigns and supervises work in a manner that fulfills its professional responsibilities.

As Tionna Carvalho explained at the March 13 OSC hearing, the Firm has two partners (including Carvalho) and more than 30 lawyers, many of whom work remotely. The Firm does not routinely designate one attorney to serve as lead counsel responsible for the case throughout its duration. Consistent with the Firm's general approach, no lawyer took such responsibility in this case. Lister, who was designated as lead counsel on the docket, never intended to serve in that capacity, nor did the Firm expect him to. The Firm's failure to have a lawyer serve as lead counsel led to many of the problems in this case. No lawyer appeared for Plaintiff at the post-settlement status conference on February 13. Dkt. No. 25. In response to the resulting OSC, Breana Rucker filed a declaration that she had been unable to appear because of a medical emergency. Dkt. No. 27. But Rucker was not lead counsel; indeed, she had not even filed a notice of appearance in the case. Lead counsel was required to appear, and Plaintiff had no lead counsel. *Cf.* Dkt. No. 10 at 2 ("Only one attorney for a party may be designated as lead counsel (and the designation must appear on the docket if a party has more than one attorney). Lead counsel must attend all proceedings set by this Court.").

The absence of lead counsel became an even greater problem once issues with the parties' pretrial filings surfaced. After Lunn signed the joint report for Plaintiff, attributing the failures to his workload, the Court observed that "Lunn is not listed on the docket in this case, and the joint report does not address why none of the five lawyers identified as counsel for Plaintiff on the docket (two of whom are listed in the report) was unable to prosecute this case." Dkt. No. 49 at 1–2; *see also id.* at 2 n.1 (describing the various acts taken by four other attorneys for Plaintiff). When Lunn and Lister responded to the Court's OSC, it became clear that neither was familiar with many of the events in the case about which the Court inquired. The Court then ordered Plaintiff to file, among other things, "a notice designating as lead counsel the attorney who has in fact been serving as lead counsel in this case" and "a declaration by that lead counsel addressing all of the items in the March 4 OSC." Dkt. No. 53 at 2. Tellingly, the Firm never identified any attorney who had been serving as lead counsel; it only designated a new lawyer to serve as lead trial counsel going forward.

This failure was consequential. The Court has little doubt that at least some of Plaintiff's errors in this case—including Lunn's agreement to filings requiring Plaintiff to prove that she purchased a new car, an impossibility—would not have

occurred had Plaintiff been represented by lead counsel responsible for overseeing the case, as required by the Court's standing order.

Apart from the fundamental failure to assign the case to an attorney who would serve as lead counsel, the Firm's supervision of its attorneys was also severely lacking.  At the OSC hearing, Carvalho, who spoke on behalf of the Firm, was unaware that Lunn had not filed an appearance until three days earlier; she stated that he should have appeared from the outset.  When asked about the Firm's approach to supervision, she stated that she was aware that Lunn had been in back-to-back (or even overlapping) trials with no breaks but hoped that if he were feeling overwhelmed and needed help, he would have communicated that to her.  Moreover, while the Firm attempted to salvage the situation by designating a new, more senior lead counsel (Larry Chae) for trial, Chae acknowledged at the PTC that he had not even read all the Court's standing orders.

In sum, the Firm's handling of this case was grossly negligent and professionally unacceptable, imposing substantial burdens on the Court and at least some additional expense on Defendant.  In her declaration, Carvalho stated:  "On behalf of myself and [the Firm], I sincerely regret the issues that have burdened this Court throughout the course of this litigation.  The shortcomings in how this case has been managed do not reflect the standards we hold ourselves to, and we take full responsibility."  Dkt. No. 56 ¶ 25.  At the OSC hearing, she agreed that there was "no excuse" for the Firm's handling of the case.  She also requested that, in weighing various sanctions, the Court not punish Plaintiff, who was not responsible for the Firm's violations, stating that the Firm wanted to "take ownership" of its mistakes instead.

The Court agrees with Carvalho's assessment that the Firm must take "full responsibility" for its handling of the case and that there is no excuse for its performance.  The fundamental failure to assign someone to serve as lead counsel or to supervise the attorneys on this case overshadowed and gave rise to the numerous failures of individual counsel.  For this reason, the Court elects not to sanction any individual attorney besides Lunn, whose role in the repeated violations warranted individual accountability.

Considering all the circumstances, the Court finds that a sanction of $10,000 is appropriate as to the Firm.  Given the volume of the Firm's practice,[2] the Court

---

[2] Carvalho alone has appeared in more than 500 cases in this district, of which nearly 350 were filed against Defendant FCA US, LLC.

is uncertain that even a $10,000 sanction is sufficient to deter similar problems in the future, but the Court gives the Firm the benefit of the doubt that it will take this lesson to heart and do better in the future.  Accordingly, the Court sanctions Plaintiff's counsel's firm, Strategic Legal Practices APC, in the amount of $10,000, to be paid into the Fiscal Section of the Clerk's Office no later than April 17, 2026.  By that same date, the Firm also shall notify the California State Bar of the sanction, attaching a copy of this order, and file proof of payment and notification.  Additionally, the Firm is ordered to provide a copy of this order to every attorney currently working at the Firm and certify that it has done so by April 17.

Finally, Defendant FCA US, LLC is entitled under Rule 16(f)(2) to reimbursement of the reasonable attorney's fees it incurred when the Court allowed Plaintiff to avoid the consequences of her agreement to the jury instructions and verdict form that doomed her case.  No later than March 30, 2026, Defendant shall provide Plaintiff with its billing records for the work performed in connection with the meet-and-confer and amended pretrial filings authorized by the Court:  the amended joint proposed jury instructions, amended joint verdict form, and amended trial brief.  Plaintiff need not reimburse Defendant for its work on the damages brief, as the Court's order for both sides to file supplemental briefs on damages did not arise directly from the failures identified in the OSC.  The parties shall meet and confer and attempt in good faith to reach agreement on the reasonable amount of fees.  No later than April 3, 2026, the parties shall file either (1) a joint report stating that they have reached agreement and Plaintiff has paid the agreed fees or (2) if they are unable to reach agreement, a joint filing with each side's position—limited to five pages each—together with the billing records and any other supporting evidence.

Date: March 26, 2026

_____

Stanley Blumenfeld, Jr.
United States District Judge

15